Case No. 17-3954, USA v. Marcus Fleming, for arguments not to exceed 15 minutes per side, Mr. Eric Nemechek for the appellant. Good morning, Your Honors. May it please the Court, I'd like to reserve five minutes for rebuttal. All right. Mr. Fleming, Eric Nemechek on behalf of the appellant, Marcus Fleming. Your Honor, within the appeal, we contend that the sentence in this case should be reversed, as it is both procedurally and substantively unreasonable. Within those arguments, there are a few, I guess, sub-arguments. So I guess focusing initially on the procedural reasonableness argument, we would first submit that the basis for the court's sentence in the case was predicated in large part on inaccurate or unreliable information. The first component of that was an article that the court had relied upon and referenced. It was a Cleveland.com article. It was actually a five-paragraph summary of a ten-page state report. The report itself was never provided to the parties. So you got that article the morning of the sentencing hearing? We were in court about to start the hearing, and the first thing the court says is I provided the parties with an article. The article was laying on the table. I'm just trying to make clear. Okay, so the past tense doesn't suggest you got it days earlier. It was just awaiting you. There was a printout on the table, no indication prior to the start of the hearing it had anything to do with our particular case. And it's within the hour, I suppose, or thereabouts, that your client gets sentenced based in part on reasoning drawn from that article? Is that accurate? However long the sentencing hearing went, the court referenced its intention to rely upon the article or consider the article in fashioning a sentence, then made no mention of exactly how it tied in, whether or not it intended to vary upwards, downwards, essentially allowed the parties to do their allocution, and then when they were finished proceeded to quote excerpts from the article and then also referenced other articles and studies that it had considered that weren't ever specifically identified or provided to the parties as indicating an increase in cocaine use or cocaine deaths in Ohio and in that jurisdiction as justifying a five-year upward variance in the case. All right. The article itself, as I said before, was simply a five-paragraph summary of the underlying state report. It didn't contain any information about the scientific methodologies that were used, any of the underlying procedures for obtaining the data, any potential rates of error, anything along those lines. And in reviewing the actual report subsequent to the hearing, we obviously were able to determine that there were certain inaccuracies, both in what was referenced in the article as well as what the court relied upon in part in basing its sentence. I think some of those are spelled out in the briefs. But in essence, the— Pardon me. I'm sorry to interrupt. This is a procedural objection that you're making right now, at least partially. Correct. And the procedural objection, as I understand it, is that this should have been provided to you earlier with some indication that he might rely on it. Is that the idea? That's part of it, that there was no advance notice with respect to the article, the intention to vary— If you had advance notice, you could have looked it up, you could have found the material that underlay it and then challenged it, that kind of thing. Is that the— That's partly it, correct. I just have a subsidiary question, which is whether it survives the Bostic question. Did you object it sufficiently to get past that, or do we have to— Let's apply plain error to this argument because it might seem— Plain error takes into account that you need to get things to the judge so that the judge knows you've got a problem. So if you thought you didn't have enough time to look at this thing, you should have objected on the theory that then the judge might have said, okay, I guess I'll give you a day and then we can come back tomorrow or something like that. But if you don't, then it becomes harder to reverse them on that ground. On that procedural ground. On the procedural ground. What is your answer to that? I would submit that there was a sufficient objection after being asked the Bostic question. There was an indication that there was an objection to not only the basis for the variance, which in large part was predicated upon the article. There was a request to make the article part of the record on appeal, which should have been an indication that that was going to serve as a basis for appellate challenge. There was also an objection based upon the lack of notice provided with respect to the court's intention to impose the variance. So that's what I'm looking at. When he cites Bostic and asks you the question, you say, is this you? Yes. You say, Your Honor, defense counsel would just make a general objection to the basis of the upper variance, fair enough, and the issuance of the upper variance, and then the words, the fact that counsel didn't receive advance notice as to the court's intention to consider a variance, that's a little bit vague as to we needed advance notice of this article. It just says we needed advance notice of the upward variance. Are you just suggesting that that's sort of built into it because that's what our problem is with it, or that somewhere else you raised the procedural objection to not having advance notice of this material as opposed to upward variance? I don't believe that it was ever specifically stated advance notice of that material. It was simply the basis for the court's decision to impose an upward variance, which included in large part its consideration of this article. So this is sort of incorporated in it. The judge had enough notice, you're saying, that you were concerned about the absence of advance notice of this article. The absence of advance notice about the article as well as the fact that, I guess, the indication of its intent to vary upward based upon in large part the article as well. I mean, the court, I guess in context, I mean, the court had just read extensively from the article in explaining the variance. Is that accurate? It had quoted excerpts from the article, correct. And so you think that when you reference the basis for the upward variance, Judge Adams would have realized that, you know, it's this, in part at least, this article that you are relying upon. I would think that in addition to the fact that there was a request specifically that the article be made part of the record that defense counsel made. It wasn't that the court had indicated its intention to include that as part of the record. It was specifically requested after the Bostic objection was lodged. Okay. As I was indicating before, a review of the state report itself indicated that large parts of the article, as it related to the cocaine possession in this particular case, were not necessarily accurate. The total number of non-fentanyl overdose deaths actually decreased from 2015 to 2016, as did the percentage of non-fentanyl deaths. That decreased by approximately 20% over the two, over the year span. And the statement that 1,109 people died from cocaine overdose deaths in 2016 also is not accurate. If you look at the table in the state report, it simply states that it was reporting substances that were in somebody's system who had died of an overdose. So all that it indicates at best is that 1,109 people who died had cocaine in their system. It doesn't tell us whether or not that was the sole cause, a contributing cause, or any sort of cause. What other substances they would have had. I think we certainly understand your point that you didn't get a chance to do sort of scrutiny of the underlying document that you would have wanted if a district court is going to double somebody's sentence because of that. Okay. And I think that also goes to the lack of notice requirement, not just with respect to its consideration of an upward variance, but as it relates to this. I think the government in their brief makes a point that, you know, drug overdoses and drug trafficking is harmful to the community. And they've cited some supplemental cases that discuss a court's sort of policy disagreements with the sentencing guidelines as justifying an upward variance. But those cases all involve situations of opioid epidemics in Ohio and fentanyl and heroin. And so the court's sort of reliance and piecemeal stringing together this cocaine epidemic as being a problem, I would agree that cocaine mixed with fentanyl is certainly a cause of a lot of deaths in Ohio or opioid epidemic. But there's nothing in the record in this case to establish that this cocaine was laced with anything more potent than simply cocaine. And in that sense, I don't think that it falls within that category of cases and is distinguishable from the cases that the government cited. This case is just a cocaine case. This case is just a cocaine case. Is that correct? This case only involves cocaine. It didn't involve any other opioids. So I would submit that it falls outside of that realm of cases where the opioid epidemic and how national standards haven't caught up with some sort of local policy. You reserved a ton of time for rebuttal, so let me ask you before we get into that. Procedurally, the district court does not mention the article's contents until you're done making your argument at the sentencing hearing. Is that correct? I believe so. I don't recall specifically. It didn't go into any sort of detail about the substance of the article or how it would play into the court's consideration of sentencing until after the parties had finished. It simply indicated here's an article that the court will be considering. All right. Could I ask a question just on my own time? It's a little bit sensitive. If you're uncomfortable answering, I won't object too heartily. On the question of assuming we agree, and I'm not saying we do, but assuming we were to reverse on the procedural ground that you should have been given more of a chance to object to the relevance of this article, is there anything in the record of this case that suggests that this judge would not be able to take fairly what we say and apply it? I think that there's an argument to be made that we did make, obviously, that reassignment would be appropriate, and I think it sort of, I guess, goes to . . . I'm asking what in the record supports that other than the fact that . . . What is it? Well, I mean, I believe that the statements throughout the course of the change of plea hearing indicating the belief that they thought Mr. Fleming would be a career offender subject to a certain enhanced guidelines range, coupled with the fact that . . . But that was true, though, right? It was true at the time, and then when it turned out that he wasn't going to be a career offender, I think, in my opinion, the way that the entire sentencing hearing was structured would be indicative of a predisposition to impose an overly harsh sentence without kind of insulating it to a certain extent from being able to be challenged on appeal like a normal case would be. I think . . . That's helpful. Thank you. You'll have your rebuttal here from the government. Good morning. May it please the Court, Matthew Call for the government. The district court committed no procedural errors, and certainly none that rose to the level of plain error that is required for most of the errors that they cite here for their procedural objections. How is it not procedural error to give this stuff to counsel with no notice and then expressly rely upon it to upwardly vary to a significant degree to put somebody in prison that much longer? I mean, how in the world is that not procedurally? Under Rule 32, Your Honor, the court can rely on information outside the pre-S.R. if it provides it to the parties in advance of sentencing. That was done here. They have to have a meaningful opportunity to respond to the information. It's meaningless. If Mr. Nemesek can't go look at the underlying story and see if the 26-year-old reporter for the Cleveland Plain Dealer or something has accurately described the scientific findings in that study, they had no chance to do any of that. If they had an objection, they could have requested additional time. They could have said, Your Honor, we need more time to review this article. We'd like a half-hour recess. We'd like you to continue it for a day. They didn't. So at a minimum, we're under plain error. And they haven't demonstrated that would be our position. They link to the underlying report in their reply brief. The data in that report is entirely consistent with what's in the article. I don't think so. And they didn't get a chance to argue it before his client got sentenced. The data in the report says the number of cocaine-related overdose deaths rose significantly from 685 in 2015 to 1,109 in 2016. That's the argument that should have happened in the district court and has not happened before he gets sentenced. The court informed them at the outset of the hearing it intended to rely on this information. He hasn't even read the article. He walks into a sentencing hearing, and the court tells him, I'm going to rely on this document, which is trying to summarize a much longer technical document. I'm going to rely on this five-paragraph document when I sentence your client in about 45 minutes. I mean, does he seriously? I mean, does counsel have a chance to read that thing and to make the argument, to argue the substantive points that you're now saying about whether it's right or wrong? We believe they do, Your Honor. This was not a lengthy article. Is this the way we do it in federal court? I mean, really? If this had been a much longer article and much more in-depth data and the defense had objected to this, I'd be inclined to agree with you, Your Honor. This was a 200, 250-page article that can be read in a minute or two. The data in it is not that surprising that there's been an increase in overdose deaths in Ohio. He disagrees that cocaine alone as an overdose source, for lack of a better term, that this article, that the underlying study supports that. I mean, let's say the district, you come in and there's an article and it's about how some scientific study that's supporting shorter sentences, and you get that as the government lawyer, and 20 minutes later the court is sentencing the guy to two months rather than a range of 51 months. I mean, would that be okay with you? Is that okay with the government if that happens? If I didn't have enough time to review, consider, and evaluate the article, I would have asked the court for more time. Okay, but I'm not really interested in whether it's plain error. I'm just talking about whether the court was procedurally unfair, and we can deal with the standard review later. I think it matters how surprising the report is, how lengthy the report is, how difficult the information in is it to digest. I think it depends on what type of information is provided. Well, I mean, Mr. Nemesek made a pretty reasoned argument here at the podium, which he didn't get to make in the district court, about why it is wrong and the article mischaracterizes and so on. I mean, that it would meet the standard you just laid out. Well, and his criticism of the article vis-à-vis the report is inaccurate. He argues that the report actually says there's been a decrease because there was a decrease in non-fentanyl deaths. He equates non-fentanyl to cocaine. Frankly, I mean, this is argument that should be happening for the first time in the district court, not here. And it's beyond me how, in the time he had, he could make this argument or counter this very argument with everything else going on in the sentencing hearing. I just wonder, why doesn't the government just confess error here on the procedural point? I mean, this is so far out of line, unless I'm really missing something. Well, we don't see it that way, Your Honor. We don't think there's anything in Rule 32 that requires a deadline for provision of this information. If this were a lengthier article, if this were a 20-page article that they couldn't possibly have gotten through, I would be inclined to agree with you. This article was 250 words. If they had a problem with it, the court specifically told them at the outset of the sentencing hearing it intended to rely on it, if they had a problem with it, they could have asked for more time, and they did not. It's fair to presume, based on that, that they had no issue with it. It's not really in dispute that we're having a drug crisis in Ohio, that we're seeing a I guess the subtext I take from Judge Kethledge's question is, does the government, apart from your totally understandable obligation to defend the judgment in your favor by the district court, and I understand that, and you're doing it in a capable fashion, but apart from that interest, is there any other interest that the government has in just not letting the district court review this case, this sentence, based on this article, after there's been a chance for the other side to attack it in front of the district judge? You don't have any interest in that. I mean, there's no public interest in favor of that. If the court wishes to remand for resentencing, it certainly can do that. We think they were given that opportunity when the court at the outset said, this is information I intend to rely on when imposing my sentence, and giving each side as much time as they wanted or needed to argue, and the defendant enough time to allocute. The court didn't even mention the particulars of the article and what the court thought was important about it until after defense counsel had finished his primary presentation. The court put its statement of reasons on the record. It was after allocution. Yes. Doesn't that make it all the harder? I mean, he has to go completely against the grain of the way the hearing is structured to respond to the extent he would theoretically be able to to the court's points about the article. When a district court is imposing its sentence, it's not a matter subject to open debate between the court and the parties. Any time I've gone to a sentencing in that court or any other district court in the Northern District of Ohio, when the judge begins putting his statement of reasons on the record, you don't interrupt him. Right. I mean, he didn't even get to hear what the court thought was important about the article before we get into the statement of reasons thing where you don't want to interrupt. The court told him it was important at the outset of the hearing. I mean, what we do here is not just going to affect this case. It's going to affect cases where you might be on the short end of this sort of thing. And so we have to think about how do we want sentencing proceedings to go in the district courts in this circuit? And it would puzzle me if the government wants district judges in this circuit to be able to serve counsel with some document that is trying to interpret a longer, more complicated document, to serve them with that document at the beginning of a hearing and then rely upon that document in some kind of significant variance, upward or downward, in the sentencing before you have a chance even to look, even to look at the underlying document. He never got a chance to look at it. Is that what the government is asking us to ratify as a practice in this circuit? Yes or no? No, Your Honor. Okay. Why? I mean, you don't want us to. The reason I'm fighting it is because if they had an objection to it, this is, as Judge Rogers pointed out, a procedural error. They had an objection. They had an obligation to raise that objection, and they didn't do so. The court had no notice. They wanted, needed more time. I mean, if this isn't, if the error isn't playing here, it's hard to see where. I mean, U.S. v. Coppinger three years ago, the court has to give the defendant a reasonable opportunity to respond to the information. I mean, this is just, this should have been obvious without whether he pointed it out, which I think fairly, you know, he said the basis of the variance. This was largely the basis of the variance. I mean, this should not be a surprise to the district court that this is an issue on appeal. It's not like, you know, unfair to the court. This could have been cured if they had said something to the effect of, we'd like more time to review this. That procedural error could have been cured. I mean, that would have been the perfect way, but I have some sympathy for the lawyer who gets this and is frankly, you know, pretty surprised and is, you know, you have an argument prepared. I mean, it would be like, you know, you have an argument prepared, and we hit you with something you never imagined, and now you're dealing with that, and it's just a lot to handle, you know. Getting back to your last point, though, about Coppinger, there's a big difference between the basis for the variance in Coppinger and here. The basis here was there's been an increase in overdose deaths. That's not unknown. This court has said on numerous occasions, even on appeals from Judge Adams, where no such report was provided to the parties in the Ford case and in the Williams case, this court affirmed upward variances where there was no such report or pre-notice given to the parties about that. I'd also, in Coppinger, the theory. The issue is more specific than overdose deaths, and that's exactly, he's saying not with my drug, not with this drug alone, there's not an increase based on cocaine deaths. The statistics from the state of Ohio that they link to in their report, in their reply brief to the report, are entirely consistent with the newspaper article and the district court's findings. So they need to show not just error. I'm sorry, Your Honor. I'm sorry. It's my fault. You go ahead. They need to show not just a procedural error, but that it was plain and it affected substantial rights. You remanded. It had a big effect on a sentence. Not if there was, not if the underlying report is entirely consistent with the article, which it is. We're not going to make that decision here. I mean, I'll be honest. Speaking for myself, we're not going to. And I'd also point out for the court that, I forget if it was earlier this week, I think it was last week, the published case of Robinson that this court issued, it was the same report that the, excuse me, the same article was provided by the court to the parties. This court affirmed the sentence in that case. So this court, another panel of this court had no problems. It was. Same judge? Same judge, same article. It was provided. Was that a published case? It was a published case from last week. We cited it in our second Rule 28J letter. Okay. And Mr. Robinson was sentenced approximately four or five days. It was over a weekend after Mr. Fleming. So we'd ask the court to at least consider that. That case didn't involve some kind of news article relating to, what did it involve? Your Honor, Robinson did. I reviewed the sentencing hearing in Mr. Robinson's case before it. The exact same language, Judge Adams comes out on the bench and tells the parties, I've provided you copies of an article, and he provided them one other thing, and I intend to rely on it in sentencing. And, again, he varied upward. Same article, Your Honor. So we don't believe that there's any plain error based on that. Do you think this was a fentanyl case? I don't remember a fentanyl. I believe Robinson was fentanyl, not cocaine, but I'm not 100% sure on that, Your Honor. The other issues that the defendants raised we don't think have any merit either. The court specifically said on several different occasions that it was not considering the career offender guideline and that it was not something that drove the sentence in this case. And, again, there was no objection, so it's a plain error standard of review. The district court's conclusion that this involved interstate drug trafficking was entirely based on facts that were admitted in the PSR. The defendant was driving a car from Michigan, presented a Michigan driver's license, said he was coming from Detroit, and was found in Canton with a kilo of cocaine in his car. Ultimately, the 120-month sentence was not unreasonable. It was a variance. It was a significant variance, but given the defendant's four previous drug convictions, two drug abuse, two drug trafficking, and his violent crime, he had a felonious assault conviction for which he served a seven-year term of imprisonment. We don't believe that. How far ahead of the hearing in Robinson were the two reports that were given prior to sentencing? I was not appellate counsel in that case, so I don't know. From my review of the sentencing transcript in Robinson, it appears that the exact same procedures were used, Your Honor. But what we're bound by is the facts as described by the court. You are, Your Honor. Therefore, we'd ask this court to affirm. If there are no other questions, thank you. All right. Thank you. Thank you, Your Honor. Just briefly, I would note this point of clarification, as Your Honor just indicated. The Robinson opinion, and again, I was not involved in the case, but the opinion specifically states that the two reports relied upon by the judge were provided to the parties prior to sentencing. Similarly, in the Ford case, the opinion notes that the court issued written notices of variance, its intent to vary to both defendants prior to the sentencing hearing. So I would say that those are distinguishing characteristics. There are several other distinguishing aspects to those cases. Notably, both cases involved fentanyl or methamphetamine, heroin and opioids in Ford's case. Again, this case did not involve any of those substances. Getting back to the issue of defense counsel could have asked for a continuance if it thought that it needed more time to prepare, and I think the court is well aware of the circumstances at issue at that particular time. But this issue could also have been avoided had the district court just given notice of an intent to vary prior to the hearing or simply provided the parties with the article and or report in advance and indicated an intention to consider or rely on it. And the district court is charged with ensuring that defendants are afforded a reasonable procedure, one that gives them the opportunity to adequately address and confront any arguments or considerations that the court may have, and I just don't think that that was done here. So while in hindsight we can say that defense counsel could have asked for a continuance and perhaps that would have resolved the issue, I think the same could be said for giving some sort of additional or advance notice in this case, not only of the materials but also of the intention. Sort of like the materials become more relevant when you know there's going to be a variance considered? Is that the idea? Well, the materials become more relevant, but also the underlying material with the state report. I mean, it's not just the article. So I'm saying the whole thing that you didn't ask for at the time, I mean, specifically, you're saying maybe that's partly because you didn't know what the stakes were. Well, at the time of receiving it, didn't necessarily know what the intention was or the nexus between the article and the hearing itself, but also, yes, did not know that the court was intending to base its decision primarily upon the article and the information contained in the report. If the court has any questions about the remaining issues or arguments? No. Thank you. Thank you very much. Thank you both for your arguments. Thank you. Clerk may adjourn court. This court is now adjourned.